UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARGENTS EQUIPMENT & REPAIR SERVICES, INC., | ) ) ) |
| Plaintiff, | ) Case No. 14-CV-4342 ) |
| v. | ) Judge John W. Darrah ) |
| USA METAL RECYCLING, LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sargents Equipment & Repair Services Inc., ("SERS") filed a three-count Complaint against USA Metal Recycling, LLC ("UMR"), alleging breach of contract, account stated, and *quantum meruit*. UMR has moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons explained below, UMR's Motion [7] is denied.

## BACKGROUND

The following facts are taken from the Complaint, submitted exhibits, and affidavits. UMR is a limited liability company registered in Arkansas. (Def.'s Mot. to Dismiss, Ex. B ¶ 3.) At all times relevant to this action, UMR did business in Arkansas, Missouri, and Oklahoma. (*Id*. ¶ 4.) UMR has no offices, employees, or designated agents in Illinois. (*Id*. ¶¶ 5-7.) Tom Smith is UMR's Chief Operating Officer. (*Id*. ¶ 2.) SERS is an Illinois corporation with a principal place of business in South Chicago Heights, Illinois. (Compl. ¶ 1.) Mike Sargent is the president of SERS. (Pl.'s Response, Ex. B1 ¶ 1.)

In August 2013, UMR[1] contacted Sargent inquiring about the possibility of SERS repairing one of UMR's "shredders."[2] (*Id.* ¶ 4.) On August 20, 2013, Sargent met with Smith at UMR's facility in Lowell, Arkansas, to provide a price quote for SERS to perform work on UMR's shredder. (Def.'s Mot. to Dismiss, Ex. B ¶ 9.) On the same day, at UMR's request, Sargent sent an email from Illinois to UMR containing the quote. (Pl.'s Response, Ex. B1 ¶ 5.) UMR did not travel to Illinois to negotiate or enter into a contract with SERS. (Def.'s Mot. to Dismiss, Ex. B ¶ 10.) On August 21, 2013, UMR sent Sargent an email accepting the terms of the quote and requested that SERS's employees travel to Arkansas to begin work. (Pl.'s Response, Ex. B1 ¶¶ 6-7.)

Subsequent to receiving UMR's email, Sargent, while in Illinois, directed SERS's employees to begin performing work for UMR. (*Id.* ¶ 8.) This work initially required meetings, planning, collecting supplies, and ordering parts to be used to perform the services under the contract; all of which was chargeable to UMR under the contract. (*Id.* ¶¶ 9-10.) From August 2013 through November 2013, Sargent regularly communicated with UMR requesting payment and discussing services. (*Id.* ¶ 11.) All of these communications took place while Sargent was in Illinois and UMR was in Arkansas. (*Id.*; Def.'s Mot. to Dismiss, Ex. B ¶ 12.)

Between September 9, 2013, and November 12, 2013, SERS sent UMR seven invoices. (Compl. ¶ 6.) UMR has paid only three of these invoices. (Pl.'s Response, Ex. B1 ¶ 12.)

---

[1] It appears from the parties' briefs that much of the transacting between the parties was performed by Tom Smith and Mike Sargent. However, Sargent's Affidavit refers only to UMR generally. When known, the specific person is named.

[2] It is unclear what a "shredder" is, but it is also referred to as a "fines sorting machine."

**LEGAL STANDARD**

A federal court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in the forum state's court. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). In Illinois, personal jurisdiction over a non-resident defendant is subject to the requirements of the Illinois Long-Arm Statute, the Illinois Constitution, and the United States Constitution. *Brandon Apparel Grp., Inc. v. Quitman Mfg., Co.*, 42 F. Supp. 2d 821, 828 (N.D. Ill. 1999). The Illinois Long-Arm Statute permits personal jurisdiction on any basis permitted by the due process clauses of the Illinois and United States Constitutions. 735 Ill. Comp. Stat. 5/2-209(c). Due to the lack of meaningful distinction between Illinois and federal due process standards, only a single due process analysis is required, *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757 (7th Cir. 2010); specifically, whether the defendant has "sufficient minimum contacts with Illinois such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 700-01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)). Such minimum contacts require a showing of defendant's "purpose[ful] establish[ment] of minimum contacts such that he or she should reasonably anticipate being haled into court." *Tamburo*, 601 F.3d at 701. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Personal jurisdiction may be general or specific. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). The exercise of general personal jurisdiction is warranted where a defendant has "continuous and systematic" contacts with the forum state. *Id*. In contrast, specific jurisdiction is applicable where: "(1) the defendant has purposefully directed his activities at the forum state

or purposefully availed himself of the privilege of conducting business in that state, (2) the alleged injury arises out of the defendant's forum related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Id.*; *See also Tamburo*, 601 F.3d at 702. Defendant's contact with the forum state must not be "random, fortuitous, or attenuated," but instead must be purposeful and substantial enough to establish a relationship with the forum, particularly with respect to the transaction in dispute. *N. Grain Mkt., LLC v. Greving,* 743 F.3d 487, 492-93 (7th Cir. 2014) (quoting *Burger King*, 471 U.S. at 474).

In determining whether personal jurisdiction exists, affidavits and other materials outside of the pleadings may be considered. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The plaintiff bears the burden of demonstrating personal jurisdiction. *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 918 (N.D. Ill. 2013). However, where no evidentiary hearing is held, as is the case here, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). All non-material disputes regarding relevant facts in the record are resolved in favor of the plaintiff. *Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*, 993 F. Supp. 2d 872, 876 (N.D. Ill. 2013). Additionally, facts included in the defendant's materials that are not refuted by the plaintiff's submissions will be accepted as true. *Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011).

## ANALYSIS

It is undisputed that UMR is not subject to general personal jurisdiction. Instead, SERS argues only that UMR's conduct subjects it to specific jurisdiction. SERS's argument is based

on four facts: UMR made initial contact with SERS, all email exchanges occurred while Sargent was in Illinois, SERS ordered supplies and otherwise prepared for the contracted work while in Illinois, and UMR sent three payments to SERS in Illinois. UMR does not dispute any of these facts, but contends that they are insufficient as minimum contacts with Illinois.

In contract disputes, the mere act of contracting with an out-of-state party, without more, does not constitute sufficient minimum contacts. *N. Grain Mktg.*, 743 F.3d at 493. Indeed, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (citations omitted). The minimum contacts analysis, as it relates to contract disputes, is context-specific and requires an examination of "prior negotiations, contemplated future consequences, the terms of the contract, and parties' course of actual dealing with each other." *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Res. Found.*, 338 F.3d at 781). With such context in mind, many courts within this district look to four factors: "which party initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where performance would have or did occur." *Corus Int'l Trading Ltd. v. Eregli Demir ve Celik Fabrikalari, T.A.S.* 765 F. Supp. 2d 1079, 1085 (N.D. Ill. 2011) (citations omitted); *accord Signode v. Sigma Techs. Int'l, LLC*, No. 09 C 7860, 2010 WL 1251448, at *3 (N.D. Ill. Mar. 24, 2010); *Buehler v. S & G Enters. Inc.*, No. 09 C 1396, 2009 WL 1543664, at *3 (N.D. Ill. June 2, 2009).

With respect to where negotiations were conducted and where the contract was executed, the record does not provide significant information. It appears that the contract was somewhat informal and that both parties were in their respective states during any negotiation and execution. It is also clear, even accepting SERS's assertions that it engaged in substantial

5

planning and materials ordering while in Illinois, that the primary performance of the contract (i.e., the shredder repair) occurred in Arkansas. However, initiation of the transaction is particularly important here. SERS alleges that UMR telephonically and by email solicited SERS in Illinois. (Compl. ¶ 3.) Deliberate interstate communications directed at a plaintiff and initiated by an out-of-state defendant with the intent to affect Illinois interests are a basis for jurisdiction. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir. 1990); *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 284 (7th Cir. 1990) ("We believe that Continental's affirmative acts of business solicitation in Illinois made it reasonably foreseeable that it could be subject to the jurisdiction of an Illinois forum."); *Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490, at *3 (N.D. Ill. 2009) ("Even where the bulk of negotiations took place outside of Illinois, Illinois courts have nonetheless found the exercise of personal jurisdiction proper where a commercial buyer deliberately reaches out beyond its home state to avail itself of the benefits [of] commercial ties with an Illinois corporation.").

UMR analogizes its lack of physical presence in Illinois to the facts of *Heller Fin., Inc. v. Ohio Savings Bank*, 158 F. Supp. 2d 825 (N.D. Ill. 2001), arguing that the only contact it has with Illinois is the contract at issue and that all pre-contractual negotiations occurred over the telephone. (Def.'s Reply at 4.) Unlike the present case where UMR intentionally reached into Illinois to obtain the benefits of SERS's services, in *Heller* it was the plaintiff that initiated the transaction. *Id*. at 827-28. Where the defendant's actions are purposefully directed towards plaintiff in the forum, as they were in this case, defendant's lack of physical presence in the state does not bear on the issue of personal jurisdiction. *N. Grain Mktg.* 743 F.3d at 493.

UMR characterizes its only contact with Illinois as a "one-time short term contract," which alone is insufficient to support personal jurisdiction. However, the minimum contacts analysis does not focus on the quantity of the contacts or the length of time over which such contacts are made. *LFG, LLC v. Zapata Corp.*, 78 F. Supp. 2d 731, 738 (N.D. Ill. 1999). Instead, "[t]he main factor in the minimum contacts inquiry is 'foreseeability.'" *Id*. (quoting *Heritage House*, 906 F.2d at 283). In other words, the contacts UMR did have with Illinois must be of a nature that UMR could reasonably anticipate having to defend itself in court here. It is reasonable under the facts here, in which a party reaches out to a company in another state to initiate business, that the party could anticipate being sued in that state. Indeed, not a single case cited by either party features a defendant who initiated contact in the forum state who was not held to have availed itself of the forum state's laws.

There is no dispute that UMR reached out to SERS in Illinois to initiate the transaction at issue. Moreover, the basic operations of the relationship kept UMR consistently on notice of its connection with an Illinois company. Sargent alleges that between August of 2013 and November of 2013, the parties were in regular contact. (Pl.'s Response, Ex. B1 ¶ 11.) Additionally, SERS has provided emails sent during this period and invoices, paid and unpaid, which were sent to UMR every two weeks for two months with SERS's location clearly identified. (Pl.'s Response, Ex. A1-A11) The consistency of the communications between the parties, along with UMR's knowledge of SERS's location clearly shows that their contact was not fortuitous or random, but was a foreseeable consequence of UMR's decision to initiate a transaction with SERS in Illinois.

It is clear that UMR's actions were aimed at SERS in Illinois. UMR purposefully directed its inquiry to Illinois for the benefit of having SERS repair the shredder, therefore availing itself of the privilege of conducting business in Illinois and making it reasonably foreseeable that it could be haled into court in Illinois.

Once the minimum contacts prong has been met, the court also must consider whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 476. This analysis includes "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id*. at 477 (internal quotation marks and citation omitted). However, where a defendant who has purposefully directed his activities at the forum residents seeks to overcome jurisdiction, he must present a compelling case in which other considerations would make the jurisdiction unreasonable. *Id*. UMR has presented no circumstances or considerations which would render this decision unreasonable.

## CONCLUSION

For the reasons discussed above, UMR's Motion to Dismiss [7] is denied.

Date: 10/15/2014

JOHN W. DARRAH
United States District Court Judge